AF Approval KL for JAM                                    Chief Approval CCG

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                         CASE NO. 8:22-cr-155-MSS-SPF

ALEXANDER LESZCZYNSKI

**PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, ALEXANDER LESZCZYNSKI, and the attorney for the defendant, RONALD KURPIERS, mutually agree as follows:

A. **Particularized Terms**

1. **Counts Pleading To**

The defendant shall enter a plea of guilty to Counts One, Three, and Four of the Indictment. Counts One and Three charge the defendant with wire fraud, in violation of 18 U.S.C. § 1343. Count Four charges the defendant with bank fraud, in violation of 18 U.S.C. § 1344.

2. **Maximum Penalties**

Counts One and Three carry a maximum sentence of 20 years' imprisonment, a fine of $250,000, a term of supervised release of not more than three years, and a special assessment of $100 per felony count. Count Four carries a

Defendant's Initials AL

maximum sentence of 30 years' imprisonment, a fine of $1,000,000, a term of supervised release of not more than five years, and a special assessment of $100.

3. <u>Elements of the Offense(s)</u>

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.

The elements of Counts One and Three are:

(1) the Defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

(2) the false pretenses, representations, or promises were about a material fact;

(3) the Defendant acted with the intent to defraud; and

(4) the Defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

The elements of Count Four are:

(1) the Defendant knowingly carried out or attempted to carry out a scheme to defraud a financial institution or to get money, assets, or other property from a financial institution by using false or fraudulent pretenses, representations, or promises about a material fact;

(2) the false or fraudulent pretenses, representations, or promises were material;

(3) the Defendant intended to defraud the financial institution; and

(4) the financial institution was federally insured.

Defendant's Initials     2

4. Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts Two and Five through Eight, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, arising out of the facts detailed in this plea agreement, except relating to those in case number 8:22-cr-371-JSM-AAS, which are governed by a separate agreement.

6. Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the victims of the offenses described herein. The estimated restitution includes $304,773 to victim Wells Fargo, and $49,000 to victims M.S. and M.S.

7. Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this

Defendant's Initials _AL_    3

Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8. Acceptance of Responsibility - Two Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

9. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(2)(A), whether in the possession or control of the United States, the defendant or defendant's nominees.

The assets to be forfeited specifically include, but are not limited to, the following: approximately $337,000 of the defendant's funds seized on March 31, 2022, from GoldSilver.com, which represents the proceeds of the offenses.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges

Defendant's Initials AL                4

(including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

Defendant's Initials    5

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Defendant expressly

Defendant's Initials  AL                6

consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

**B.    Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any

Defendant's Initials AL              7

victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check or money order to the Clerk of the Court in the amount of $300, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2. <u>Supervised Release</u>

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from

Defendant's Initials _AL_                    8

imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in

Defendant's Initials _AL_    9

which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the

Defendant's Initials _AL_           10

assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials *AL*       11

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that

Defendant's Initials  AL                    12

defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

Beginning in March 2019 and continuing through at least April 2022, Alex Leszczynski used fictitious corporate entities he controlled, including Love & Bliss Inc. ("Love & Bliss"), 52 Inc., and Aura Inc. ("Aura"), to perpetrate at least

Defendant's Initials AL                13

three fraud schemes: (1) attempting to obtain and obtaining via interstate wire Paycheck Protection Program ("PPP") loans for Love & Bliss through the use of materially false and fraudulent representations and pretenses; (2) filing via interstate wire false and fraudulent warranty deeds purporting to transfer high-value properties around the country from the true owners to the defendant's fictitious corporate entities; and (3) writing checks drawn on accounts at a federally-insured financial institutions knowing that the accounts were closed or had insufficient funds to cover the checks.

**Paycheck Protection Act Loan**

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020, which was designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic.

One source of relief that the CARES Act provides was the authorization of up to $349 billion in forgivable loans to small businesses for payroll, mortgage interest, rent/lease, and utilities, through a program referred to as the Paycheck Protection Program. In or around April 2020, Congress authorized up to $310 billion in additional PPP funding.

The PPP allowed qualifying small businesses and other organizations to receive PPP loans. Businesses had to use PPP loan proceeds for payroll costs, interest on mortgages, rent, and/or utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these

Defendant's Initials *AL*                    14

expense items within a designated period of time and used a certain percentage of the PPP loan proceeds for payroll expenses.

The amount of money that a small business was entitled to receive through a PPP loan was determined by a number of factors, including the number of employees that the business employed and the business's average monthly payroll costs.

In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was had to be signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to obtain the PPP loan. The business had to provide among other things, its (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses.

The PPP was overseen by the Small Business Administration ("SBA"). However, individual PPP loans were issued by private, approved lenders who received and processed PPP applications and supporting documentation, and then made loans using the lenders' own funds, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

Defendant's Initials _AL_    15

On or about July 21, 2020, Leszczynski signed and submitted an online PPP application to Financial Institution 1 (a federally-insured financial institution) from his home address in the Middle District of Florida. The application included multiple materially false and fraudulent representations and pretenses, including asserting that he had 13 employees who had a combined monthly salary of $39,080. On July 27, 2020, based on this fraudulent application, Financial Institution 1 funded the loan in the amount of $97,700, which was deposited via interstate wire into an account Leszczynski controlled at Financial Institution 1 with an account number ending in 1074. Leszczynski later obtained a second round PPP loan based on the same false and fraudulent representations, which was funded in the amount of $98,210. In addition to the two funded PPP loans, Leszczynski submitted three additional PPP applications for Love & Bliss. Combined, these three applications requested $1,172,400 in PPP funds; these loans were not funded. From in or around June 2020 and continuing through April 2022, Leszczynski obtained and attempted to obtain a total of $1,368,310 in fraudulent PPP funds.

**Deed Scheme**

On or about October 7, 2020, while within the Middle District of Florida, Leszczynski filed with the Clerk of Court for Pinellas County a warranty deed purporting to transfer a parcel of property Redington Shores, Florida from its rightful owners, M.S. and M.S., to Aura, a fictitious corporate entity that Leszczynski controlled. Leszczynski filed the fraudulent warranty deed using an online title and deed company headquartered in Ohio with an account in his name.

Defendant's Initials *AL*         16

The warranty deed was allegedly witnessed by identity theft victim J.T. and notarized by identity theft victim J.M.; Leszczynski forged both of these signatures. At the time of the attempted transfer, the M.S. and M.S. property was valued at $5.75 million (the price they paid for it). Since discovering the fraudulent deed, M.S. and M.S. have engaged in civil litigation in an attempt to correct the deed, and have received inflammatory and threatening communications from Leszczynski as a result, including the conduct that resulted in the charges in case number 8:22-cr-371-JSM-AAS (obstruction of justice and murder for hire). As a result of Leszczynski's conduct, M.S. and M.S. have spent $49,000 in fees.

From in or around March 2019 through the date of his indictment, in total, Leszczynski attempted to transfer ten properties around the United States to fictitious corporate entities he controlled. None of the transfers were successful.

**Check Scheme**

From October to November 2021, Leszczynski attempted to pass checks drawn on two accounts by depositing those checks into a Financial Institution 1 account in the name of Love & Bliss. At the time he attempted to draw these checks, which were drawn on a Financial Institution 2 account in the name of Love & Bliss and a Financial Institution 3 account in the name of victim S.W., he knew that the accounts were either closed or had insufficient funds to cover the amounts on the checks. For example, on October 19, 2021, Leszczynski deposited into a Financial Institution 1 account in the name of Love & Bliss check number 1013, drawn on a Financial Institution 2 account in the name of Love & Bliss, payable to

Defendant's Initials  AL              17

himself for $4,995, knowing there were no funds to cover the check. Due to the volume of checks Leszczynski deposited, Financial Institution 1 instituted a freeze on his account and refused to fund some of the checks. In response, Leszczynski forged a letter from Financial Institution 2 stating that there were sufficient funds to cover the checks and requesting that the funds be released. Leszczynski attempted to deposit worthless checks totaling $3,066.130.50, and was successful in receiving $108,860 from Financial Institution 1.

**Laundering**

After receiving the PPP funds and the check scheme funds, Leszczynski moved the fraudulently-obtained funds through a variety of accounts to attempt to thwart the recovery of those funds by law enforcement officers or the victim entities. Specifically, on or about September 17, 2021, the Financial Institution 1 1074 had a balance of $239,079.49 from the two PPP loans. On or about September 20, 2021, the bank records reflect an outgoing payment of $239,000 to Financial Institution 4 account ending in 0078 in the name of 52 Inc. On or about October 20, 2021, and October 22, 2021, Leszczynski deposited $46,010.77 and $62,853.00, respectively, from the check scam.

On December 3, 2021, a search warrant was executed at the Leszczynski family residence, which is also the business address of Love & Bliss and 52 Inc. Three days later, on or about December 6, 2021, Leszczynski transferred $346,959.56 from Financial Institution 4 account ending in 0078 to Financial Institution 4 account ending in 0127 also in the name of 52 Inc. Then, on or about

Defendant's Initials _AL_            18

January 11, 2022, Leszczynski wired $337,000 to a Financial Institution 5 account in the name of GoldSilver.com, for the purpose of attempting to purchase gold. The United States seized these funds. After Leszczynski became aware of the seizure, he attempted to have GoldSilver.com release the funds by providing them with a forged Presidential Pardon purportedly signed by President Donald J. Trump.

12.  **Entire Agreement**

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea. The parties acknowledge that the government and the defendant have also negotiated a separate plea agreement with respect to case number 8:22-cr-371-JSM-AAS.

Defendant's Initials _AL_     19

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 17th day of November, 2022.

ROGER B. HANDBERG
United States Attorney

_____
Alexander Leszczynski
Defendant

_____
Rachel K. Jones
Assistant United States Attorney
Digitally signed by RACHEL JONES
Date: 2022.11.17 08:46:34 -05'00'

_____
Ronald J. Kurpiers, II
Attorney for Defendant

_____
Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section